UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| NATHANIEL CHARLES HARRIEL, SR.,<br><br>    Plaintiff<br><br>v.<br><br>RENO POLICE DEPARTMENT, et al.,<br><br>    Defendants | Case No.: 3:22-cv-00419-ART-CSD<br><br>**Report & Recommendation of<br>United States Magistrate Judge**<br><br>Re: ECF Nos. 1, 1-1, 3, 5, 6 |

This Report and Recommendation is made to the Honorable Anne R. Traum, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Plaintiff, who is an inmate in the Washoe County Detention Facility (WCDF) filed an application to proceed in forma pauperis (IFP) (ECF No. 1) and pro se complaint (ECF No. 1-1). Plaintiff then filed a motion for appointment of counsel. (ECF No. 3.) Plaintiff subsequently filed a second IFP application (ECF No. 5) and proposed first amended complaint (FAC) (ECF No. 6).

**I. IFP APPLICATION**

A person may be granted permission to proceed IFP if the person "submits an affidavit that includes a statement of all assets such [person] possesses [and] that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress." 28 U.S.C. § 1915(a)(1).

The Local Rules of Practice for the District of Nevada provide: "Any person who is unable to prepay the fees in a civil case may apply to the court for authority to proceed [IFP]. The application must be made on the form provided by the court and must include a financial affidavit disclosing the applicant's income, assets, expenses, and liabilities." LSR 1-1.

"[T]he supporting affidavits [must] state the facts as to [the] affiant's poverty with some particularity, definiteness and certainty." *U.S. v. McQuade*, 647 F.2d 938, 940 (9th Cir. 1981) (quotation marks and citation omitted). A litigant need not "be absolutely destitute to enjoy the benefits of the statute." *Adkins v. E.I. Du Pont de Nemours & Co.*, 335 U.S. 331, 339 (1948).

An inmate submitting an application to proceed IFP must also "submit a certificate from the institution certifying the amount of funds currently held in the applicant's trust account at the institution and the net deposits in the applicant's account for the six months prior to the date of submission of the application." LSR 1-2; *see also* 28 U.S.C. § 1915(a)(2). If the inmate has been at the institution for less than six months, "the certificate must show the account's activity for this shortened period." LSR 1-2.

If a prisoner brings a civil action IFP, the prisoner is still required to pay the full amount of the filing fee. 28 U.S.C. § 1915(b)(1). The court will assess and collect (when funds exist) an initial partial filing fee that is calculated as 20 percent of the greater of the average monthly deposits or the average monthly balance for the six-month period immediately preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1)(A)-(B). After the initial partial filing fee is paid, the prisoner is required to make monthly payments equal to 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency that has custody of the prisoner will forward payments from the prisoner's account to the court clerk each time the account exceeds $10 until the filing fees are paid. 28 U.S.C. § 1915(b)(2).

In his second IFP application, Plaintiff's certified account statement indicates that his average monthly balance for the last six months was $1.34, and his average monthly deposits were $25.00.

Plaintiff's second application to proceed IFP (ECF No. 5) should be granted. Plaintiff is required to pay an initial partial filing fee in the amount of $5 (20 percent of $25). Thereafter, whenever his prison account exceeds $10, he must make monthly payments in the amount of 20 percent of the preceding month's income credited to his account until the $350 filing fee is paid.

Plaintiff's first IFP application (ECF No. 1) should be denied as moot.

## II. SCREENING

**A. Standard**

Under the statute governing IFP proceedings, "the court shall dismiss the case at any time if the court determines that-- (A) the allegation of poverty is untrue; or (B) the action or appeal-- (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(A), (B)(i)-(iii).

In addition, under 28 U.S.C. § 1915A, "[t]he court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In conducting this review, the court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2).

Dismissal of a complaint for failure to state a claim upon which relief may be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) track that language. As such, when reviewing the adequacy of a complaint under these statutes, the court applies the same standard as is applied under Rule

12(b)(6). *See e.g. Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000) (citation omitted).

The court must accept as true the allegations, construe the pleadings in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted). Allegations in pro se complaints are "held to less stringent standards than formal pleadings drafted by lawyers[.]" *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks and citation omitted).

A complaint must contain more than a "formulaic recitation of the elements of a cause of action," it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more … than … a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id*. (citation and quotation marks omitted). At a minimum, a plaintiff should include "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A dismissal should not be without leave to amend unless it is clear from the face of the complaint that the action is frivolous and could not be amended to state a federal claim, or the district court lacks subject matter jurisdiction over the action. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995); *O'Loughlin v. Doe*, 920 F.2d 614, 616 (9th Cir. 1990).

**B. Plaintiff's FAC**

Preliminarily, since Plaintiff has filed a proposed FAC, the original complaint (ECF No. 1-1) should be dismissed as moot.

In the proposed FAC, Plaintiff names as defendants the Reno Police Department, Reno Police Department Officer Sanchez, Tyler Alton of the Washoe County District Attorney's Office, Washoe County/the Washoe County Jail, and Judge Clifton.

Plaintiff alleges that on July 27, 2022, he was approached by Reno Police Department Officer Sanchez and three unnamed officers. There was a Hispanic civilian at the scene. Plaintiff was going to give this man $40 for his H.P. laptop. Before he could go into his pocket to reach for the money to buy the laptop, guns were drawn to Plaintiff's head. Sanchez asked Plaintiff what he was doing there. Plaintiff explained he was buying a laptop and was headed to work, and Sanchez placed him in handcuffs. Plaintiff was detained for another 45 minutes, and Plaintiff overheard Sanchez say that he had a fugitive-at-large warrant out of San Diego (for Plaintiff). Sanchez asked Plaintiff if he had ID, and Plaintiff replied that he did. Sanchez asked if he could go into Plaintiff's back pocket to get his wallet. Plaintiff said only to get his wallet. Sanchez then said he was going to go into Plaintiff's pockets, and Plaintiff yelled that is an illegal search and asked for a lawyer. While searching Plaintiff prior to putting him in the car, Sanchez found "personal use paraphernalia." Sanchez put Plaintiff into the back of his car and did not read Plaintiff his Miranda rights. Nor did he ever tell Plaintiff why he was stopped. Plaintiff asserts that there was no probable cause for his arrest and detention.

While in the car, Sanchez told Plaintiff he had a fugitive warrant (for Plaintiff) from Oakland, California. Plaintiff avers that he subsequently found out there was no fugitive warrant for his arrest. Plaintiff was transported to WCDF.

Plaintiff alleges that Judge Clifton violated his due process rights because he was not given the option for speedy preliminary rights. Plaintiff goes on to allege that Deputy District

Attorney Tyler Alton brought up a case from 1998, and Plaintiff asked if he could say something for the record, and Judge Clifton put his court date off for 60 days.

Next, Plaintiff avers that he was placed in solitary confinement from July 27, 2022, until August 17, 2022, and the toilet only had one flush per 30 minutes.

Plaintiff mentions that he received mail from the U.S. District Court on September 23, 2022, and he had 30 days to return a signed inmate account signature. He states that he had Deputy Calvert send a copy to the inmate accountant to be signed, and they have yet to comply. Then on October 1, 2022, he had him send out an email and Plaintiff was still waiting. He asserts they are using stall tactics.

Plaintiff then asserts that on October 1, 2022, he was called to talk to a deputy about an incident with a prior cellmate. When he came down the stairs, he slipped and fell, and his right foot and left ankle and toes were sore. A deputy sent him to the infirmary almost immediately where he saw a nurse who asked if Plaintiff needed Tylenol or Advil, and Plaintiff said he would get it from the night nurse. Later that day, he got Tylenol from the night nurse. The next day, Plaintiff went back to the infirmary because his right knee was hurting and he was limping, and his right and left foot toes were in pain. He told this to Nurse Mike, and he said he was really busy and would call for Plaintiff later. Nurse Mike never called Plaintiff back. Then a female nurse came to the unit and Plaintiff told her he was in pain, but he was denied pain medication.

**C. Analysis**

    **1. Officer Sanchez**

The court construes Plaintiff's allegations as asserting Fourth Amendment claims for unlawful search and seizure against Officer Sanchez.

First, Plaintiff alleges that Officer Sanchez detained and possibly arrested him without probable cause, telling Plaintiff he was being detained on a fugitive warrant when no such warrant existed. Second, Plaintiff avers that Sanchez improperly searched his pockets.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." U.S. Const. amend IV.

"A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment provided the arrest was without probable cause or other justification." *Lacey v. Maricopa County*, 693 F.3d 896, 918 (9th Cir. 2012) (citation omitted). "A false-arrest claim … has a life independent of an ongoing trial or putative future conviction—it attacks the arrest only to the extent it was without legal process, even if legal process later commences." *McDonough v. Smith*, 139 S.Ct. 2149, 2159 (2019) (citing *Wallace v. Kato,* 549 U.S. 384, 389-93 (2007)).

A section 1983 claim premised on unlawful search and seizure generally accrues at the time the search and seizure occur. *See Belanus v. Clark*, 796 F.3d 1021, 1025, 1026 (9th Cir. 2015); *Venegas v. Wagner*, 704 F.2d 1144, 1146 (9th Cir. 1983).

"If a plaintiff files a false-arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended." *Wallace*, 549 U.S. at 393-94 (citations omitted).[1] "If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, *Heck* will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit." *Id*. at 394 (citations omitted).

---

[1] This holding from *Wallace* appears to apply equally to a claim for an unlawful search.

1   Plaintiff states colorable unlawful arrest and search claims against Officer Sanchez;
2  however, it does not appear that Plaintiff has been convicted; therefore, these claim should be
3  stayed pending resolution of Plaintiff's criminal case. If Plaintiff is convicted, the court must
4  determine whether his claims would impugn his conviction, in which case, they must be
5  dismissed under *Heck v. Humphrey*, 512 U.S. 477 (1994).

6   Plaintiff appears to allege that his rights were violated when he was not read his *Miranda*
7  rights. The Fifth Amendment provides: "No person … shall be compelled in any criminal case to
8  be a witness against himself…." U.S. Const. amend. V. This right against self-incrimination was
9  addressed in *Miranda v. Arizona*, 384 U.S. 436 (1966), where the Supreme Court held: "The
10 prosecution may not use statements, whether exculpatory or inculpatory, stemming from
11 custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards
12 to secure the privilege against self-incrimination." *Miranda*, 384 U.S. at 444. In *Vega v. Tekoh*,
13 142 S.Ct. 2095 (2022), the Supreme Court held a violation of *Miranda* does not provide a basis
14 for a claim under section 1983. *Id*. at 2101.

15   Finally, insofar as Plaintiff asks the court to suppress all arresting officers audio/video
16 body camera evidence, such an argument must be made in his underlying criminal case.

17   **2. Reno Police Department**

18   First, while the City of Reno might be an appropriate defendant, the Reno Police
19 Department is not a proper defendant. A public agency is not a person or entity subject to suit
20 unless that agency is a separate legal entity. *Hervey v. Estes*, 65 F.3d 784, 791-92 (9th Cir. 1995).
21 Applying Federal Rule of Civil Procedure 17(b)[2], the Ninth Circuit has held that state law

---

[2] Rule 17(b) states that capacity to sue or be sued (other than for an individual or corporation) is determined by the law of the state where the court is located. Fed. R. Civ. P. 17(b)(3).

8

determines the issue of whether a department of a municipality may sue or be sued. *See e.g. Streit v. County of Los Angeles*, 236 F.3d 552, 565 (9th Cir. 2001).

In Nevada, each county (or incorporated city or town within the county) is a political subdivision of the state and an independent legal entity, which means it can sue or be sued. *See Clark County v. Lewis*, 88 Nev. 254, 498 P.2d 363, 365 (Nev. 1972); Nevada Revised Statute (NRS) 280.080; NRS 41.0305. A department of a county, city or town, however, "may not, in the department name, sue or be sued" without statutory authorization. *See Wayment v. Holmes*, 912 P.2d 816, 819, 112 Nev. 232, 238 (Nev. 1996) (concluding that the "Washoe County District Attorney's office is not a suable entity because it is a department of Washoe County, not a political subdivision" and noting the State had not waived immunity on behalf of its departments of political subdivisions so the District Attorney's Office had not been conferred the power to sue or be sued) (citing Nev. Rev. Stat. (NRS) 41.031); *see also Wright v. City of Las Vegas,* 395 F.Supp.2d 789, 794 (S.D. Iowa 2005); *Schneider v. Elko County Sheriff's Dep't*, 17 F.Supp.2d 1162, 1165 (D. Nev. 1998) (finding that Elko County Sheriff's Department lacked capacity to be sued).

Therefore, the Reno Police Department should be dismissed. If a plaintiff improperly names a city or county department that lacks capacity to be sued, the court may order the proper party (generally the county or city) be substituted into the case. *Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015).

While a city or county might be a proper party, municipalities may be only be liable for the infringement of constitutional rights under certain circumstances. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-95 (1978). "In particular, municipalities may be liable under § 1983 for constitutional injuries pursuant to (1) an official policy; (2) a pervasive practice or custom;

(3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." *Horton v. City of Santa Maria,* 915 F.3d 592, 602-03 (9th Cir. 2019). A municipality may not be sued under a respondeat superior theory. *Id.* at 603. (citing *Monell*, 436 U.S. at 693-95). Instead, "[a] plaintiff must therefore show '*deliberate* action attributable to the municipality [that] directly caused a deprivation of federal rights.'" *Id*. (quoting *Bd. of Cty. Comm'rs v. Brown,* 520 U.S. 397, 415 (1997)) (emphasis original).

Here, Plaintiff has not included allegations in the proposed FAC sufficient to state any claim against the City of Reno. Presumably, his claims against the City of Reno would be related to the conduct alleged as to Officer Sanchez. As such, Plaintiff may seek leave to amend his complaint as to the City of Reno in the event the stay is lifted as to the claims against Officer Sanchez (assuming they are not dismissed without prejudice under *Heck*).

**3. Judge Clifton and Deputy District Attorney Tyler Alton**

Plaintiff alleges that Judge Clifton denied Plaintiff his due process right to a speedy proceeding. Judges are entitled to absolute judicial immunity for acts performed in their official capacity, as Plaintiffs have alleged here. *See In re Castillo*, 297 F.3d 940, 947 (9th Cir. 2002); *see also Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986) (en banc); *Moore v. Brewster*, 96 F.3d 1240, 1243 (9th Cir. 1996). Therefore, Plaintiff's claim against Judge Clifton should be dismissed with prejudice.

State prosecutors are absolutely immune from section 1983 actions when performing functions "intimately associated with the judicial phase of the criminal process" or phrased differently, "when performing the traditional functions of an advocate." *Garmon v. County of Los Angeles*, 828 F.3d 837, 842 (9th Cir. 2016) (citing *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976); *Kalina v. Fletcher*, 522 U.S. 118, 131 (1997)). Plaintiff's only allegation against Deputy

District Attorney Tyler Alton is that he brought up a case from 1998 during Plaintiff's proceeding. This appears to have been performed in his function as an advocate; therefore, Plaintiff's claim against Alton should be dismissed with prejudice.

**4. Washoe County/the Washoe County Jail**

Again, Washoe County and not the Washoe County Jail, would be a proper defendant, Therefore, the Washoe County Jail should be dismissed from this action. Plaintiff should be given leave to amend to proceed against Washoe County; however, Plaintiff must still assert a colorable claim against Washoe County under *Monell*.

Plaintiff provides no specific allegations with respect to Washoe County. Plaintiff mentions being placed in solitary confinement with a toilet that only had one flush every 30 minutes; a delay in obtaining an account signature; and issues regarding his medical care. However, he does not specifically include any allegations as to Washoe County's involvement in these incidents. Therefore, he should also be given leave to amend to attempt to assert a claim against Washoe County within the parameters of *Monell* outlined above.

**5. Miscellaneous Items**

As was noted above, Plaintiff references a stay in solitary confinement, a delay in receiving a signature on an inmate account statement, and a claim regarding his medical care after he slipped and fell. Plaintiff does not identify any specific constitutional violations, nor does he describe what defendant(s) are liable for any violations of his rights. Plaintiff should be given leave to amend to attempt to assert a claim surrounding these incidents, provided the allegations must be directed toward specific defendants.

### III. MOTION FOR APPOINTMENT OF COUNSEL

"Generally, a person has no right to counsel in civil actions." *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009) (citing *Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir. 1981)). The court can, however, "request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). That being said, the appointment of counsel for an indigent litigant in a civil case is within the court's discretion and is only allowed in "exceptional cases." *See Palmer*, 560 F.3d at 970 (citations omitted). "When determining whether 'exceptional circumstances' exist, a court must consider 'the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues involved.'" *Id.* (quoting *Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983)). "Neither of these considerations is dispositive and instead must be viewed together." *Id.* (citing *Wilborn v. Escalderon,* 789 F.2d 1328, 1331 (9th Cir. 1986)).

In his motion, Plaintiff states that he is unable to afford counsel and his imprisonment will limit his ability to litigate this case. He further contends the issues involved in this case are complex and counsel would be better able to present evidence and cross-examine witnesses.

Unfortunately, the circumstances identified by Plaintiff apply to nearly all pro se indigent litigants and do not present the "exceptional circumstances" warranting appointment of counsel. Plaintiff does not explain how his case is so complex that counsel should be required. Nor does he address his likelihood of success on the merits. For these reasons, Plaintiff's motion for appointment of counsel (ECF No. 3) should be denied.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order:

(1) **GRANTING** Plaintiff's second IFP application (ECF No. 5) and **DENYING AS MOOT** his first IFP application (ECF No. 1); however, Plaintiff is required to pay, through WCDF (or any other facility or institution he is housed in), an initial partial filing fee in the amount of $5, within thirty days of the entry of any order adopting and accepting this Report and Recommendation. Thereafter, whenever his prison account exceeds $10, he is required to make monthly payments in the amount of 20 percent of the preceding month's income credited to his account until the full $350 filing fee is paid. This is required even if the action is dismissed, or the action is otherwise unsuccessful. The Clerk should be directed to **SEND** a copy of an order adopting and accepting this Report and Recommendation to the attention of **Chief of Inmate Services for WCDF, 911 E. Parr Blvd., Reno, NV 89512.**

(2) The complaint (ECF No. 1-1) should be **DISMISSED AS MOOT**.

(3) Plaintiff should be allowed to **PROCEEFD** with his Fourth Amendment claims for unlawful arrest and unlawful search against Officer Sanchez; however, this action should be stayed insofar as those claims are concerned pending resolution of Plaintiff's underlying criminal case. The court should require Plaintiff to file a notice within 30-days of any order adopting this Report and Recommendation advising of the status of his underlying criminal case. The action should be **DISMISSED WITH PREJUDICE**.

(4) Plaintiff's claim based on the violation of *Miranda* should be **DISMISSED WITH PREJUDICE**;

(5) The Reno Police Department should be **DISMISSED;** however, Plaintiff should be given leave to amend to assert a claim against the City of Reno when the stay is lifted as to the claims against Officer Sanchez (assuming they are not dismissed without prejudice under *Heck*).

(6) Plaintiff's claim against Judge Clifton should be **DISMISSED WITH PREJUDICE**.

(7) Plaintiff's claim against Tyler Alton should be **DISMISSED WITH PREJUDICE**.

(8) The Washoe County Jail should be **DISMISSED**; however, Plaintiff should be given leave to amend to attempt to assert a colorable *Monell* claim against Washoe County.

(9) Plaintiff should also be given leave to amend with respect to his stay in solitary confinement, his medical care after he slipped and fell, and the delay in providing a signature for an inmate account.

(10) Plaintiff should be given **30 DAYS** from the date of any order adopting this Report and Recommendation to file an amended complaint correcting the deficiencies noted above. The amended complaint must be complete in and of itself without referring or incorporating by reference any previous complaint. Any allegations, parties, or requests for relief from a prior complaint that are not carried forwarded in the amended complaint will no longer be before the court. Plaintiff shall clearly title the amended pleading as "SECOND AMENDED COMPLAINT." If Plaintiff fails to file a second amended complaint within the 30 days, the action will proceed only as to the Fourth Amendment claims against Officer Sanchez, which will be stayed pending resolution of his underlying criminal case.

(11) Plaintiff's motion for appointment of counsel (ECF No. 3) should be **DENIED**.

Plaintiff should be aware of the following:

1. That he may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report

and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: February 1, 2023

_____
Craig S. Denney
United States Magistrate Judge